**BROWN–WILBERT, INC.,**
**et al., Appellants,**

v.

**COPELAND BUHL & CO., P.L.L.P.,**
**et al., Respondents.**

**No. A05–1952.**

Court of Appeals of Minnesota.

June 13, 2006.

Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, P.A., and George E. Antrim, III, George E. Antrim, III, PLLC, Minneapolis, MN, for appellants.

Thomas J. Shroyer, Peter A. Koller, Julia M. Dayton, Moss & Barnett, P.A., Minneapolis, MN, for respondents.

Considered and decided by TOUSSAINT, Chief Judge; DIETZEN, Judge; and HARTEN, Judge.*

## OPINION

DIETZEN, Judge.

Appellant challenges the district court judgment dismissing its second lawsuit against respondent on res judicata grounds, arguing that the second lawsuit was not precluded because there is no final judgment on the merits in the first lawsuit, the first and second lawsuits involve different causes of action, and they were deprived of a full and fair opportunity to litigate the matter. Respondent argues that the second lawsuit is barred by application of res judicata and the prohibition against claim splitting. Because we conclude that there has not been a final judgment on the merits in the first lawsuit and that the prohibition against claim splitting

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

is part of the doctrine of res judicata, we reverse.

## FACTS

Appellant Brown–Wilbert, Inc. (Brown–Wilbert) is engaged in the business of manufacturing burial vaults, septic tanks, and other concrete products, and arranges for the distribution and sale of its products throughout the upper Midwest. Appellant Christopher Brown (C.B.) owns Brown–Wilbert. Respondent Lee Harren and respondent accounting firm Copeland Buhl & Co. were retained by C.B. and his father, Jerry Brown (J.B.), to assist in the purchase of Chandler–Wilbert, Inc., the family business started by C.B.'s maternal grandfather.[1]

In 1993, Chandler–Wilbert initiated discussions regarding the sale of the company to C.B. with the intent that he would ultimately take over the family business. C.B. and J.B. formed Brown–Wilbert to acquire the stock of Chandler–Wilbert. J.B. recommended that respondent serve as the accountant for Brown–Wilbert in the transaction. C.B. and J.B. agreed that C.B. would buy the majority of the equity in the company, and that both would share control of the company on a 50–50 basis. Trusting his father and respondent, C.B. agreed to a revised proposal whereby he would own 80% of the company, but J.B. would own 51% of the voting shares. C.B. was led to believe that the proposal was a condition for a loan of $1,000,000 to Brown–Wilbert.

Ultimately, C.B. and J.B. purchased all of the stock of Chandler–Wilbert, and operated its successor Brown–Wilbert. Respondent continued to provide accounting and financial services to the company. In December 1997, the $1,000,000 loan was fully repaid, which eliminated the alleged obstacle to C.B. obtaining control of Brown–Wilbert consistent with his 80% majority equity interest in the company. Respondent allegedly failed to advise C.B. of that fact.

Between 1997 and 2003, respondent allegedly joined with J.B. to squeeze C.B. out of the operations of Brown–Wilbert, using a variety of illegal methods, including presenting inaccurate and misleading financial information, falsifying Brown–Wilbert's audited financial statements, threatening that if C.B. did not accept a buy-out that he would be required to immediately re-pay significant loans to the company, and advocating J.B.'s interests to the detriment of C.B. Respondent never advised C.B. of any conflicts of interest.

In March 2004, appellant commenced a lawsuit against respondent, alleging the following theories of recovery: breach of contract, breach of fiduciary duty, accounting malpractice, and restitution (first lawsuit). Respondent moved to dismiss the first lawsuit, alleging that appellant failed to submit the expert-review and expert-identification affidavits required by Minn. Stat. § 544.42 (2004). The district court found that appellant failed to provide the requisite expert affidavits within the statutory time limits, and granted respondent's motion to dismiss the entire lawsuit.

On appeal, this court affirmed the district court's dismissal with prejudice of appellant's accounting-malpractice claim for failure to timely satisfy the expert-review and expert-identification affidavit requirements, but we remanded the remaining three counts with directions for the district court to determine whether expert testimony was necessary to establish a prima facie case on those counts. *Brown–Wilbert, Inc. v. Copeland Buhl &*

---

1. Although there are multiple appellants and respondents in this appeal, the parties will be referred to in the singular form for ease of usage.

*Co.*, 2005 WL 3111959, *3 (Minn.App. Nov.22, 2005), *review granted* (Minn. Feb. 14, 2006).

In February 2005, appellant commenced a second lawsuit against respondent, alleging fraud, intentional misrepresentation, negligent representation, and aiding and abetting as theories of recovery (second lawsuit). The factual allegations of the second lawsuit were very similar to but not identical to those in the first lawsuit. The complaint in the second lawsuit re-framed the same facts in terms of fraud and misrepresentation and added two new factual allegations that respondent provided misleading information regarding debts that C.B. owed to Brown–Wilbert and refinanced the company without C.B.'s knowledge.

Respondent then moved to dismiss the second lawsuit, alleging that it was precluded by the doctrine of res judicata. The district court agreed, reasoning that res judicata applied because there was a final judgment on the merits in the first lawsuit and appellant's complaint in the second lawsuit was "a recasting of the earlier complaint." The district court concluded that the allegations in the second complaint were "substantially though not wholly, identical to those set forth in the first complaint." This appeal from the judgment of dismissal followed.

Subsequently, the Minnesota Supreme Court granted appellant's petition for review in the first lawsuit for the following issues: (1) what constitutes a "demand" for counsel's affidavit of expert review that triggers the 60–day period under Minn. Stat. § 544.42, subd. 6; and (2) what is the minimum standard for an affidavit of expert identification sufficient to entitle plaintiff to notice of deficiencies and an opportunity to cure under Minn.Stat. § 544.42. The briefs have been submitted and the parties are awaiting scheduling.

## ISSUES

I. Did the district court err by dismissing appellant's second lawsuit under the doctrine of res judicata?

II. Does the prohibition against claim splitting provide an affirmative defense separate from the doctrine of res judicata?

## ANALYSIS

### I.

On appeal, appellant argues that the district court erred in applying the res judicata doctrine to the second lawsuit because there is no final judgment on the merits in the first lawsuit, the first and second lawsuits involve different causes of action, and appellant was deprived a full and fair opportunity to litigate the matter.

The application of res judicata is a question of law, which we review de novo. *State v. Joseph*, 636 N.W.2d 322, 326 (Minn.2001). Res judicata is a finality doctrine designed to ensure an end to litigation. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn.2004). Under the doctrine of res judicata, a final judgment on the merits is an absolute bar to a second suit for the same cause of action and is conclusive, not only as to every matter actually litigated, but also as to every matter that might have been litigated. *Paulos v. Johnson*, 597 N.W.2d 316, 319 (Minn.App.1999), *review denied* (Minn. Sept. 28, 1999). Because res judicata precludes litigation of subsequent claims arising out of the same group of operative facts, whether or not a particular issue or legal theory was actually litigated in the original action, a party must "assert all alternative theories of recovery in the initial action." *Hauschildt*, 686 N.W.2d at 840.

Res judicata applies when (1) there has been a final judgment on the merits, (2) the same cause of action is involved, (3) the parties are identical or in privity, and (4) the estopped party had a full and fair opportunity to litigate the matter. *Id.* (full and fair opportunity to litigate); *Myers by Myers v. Price,* 463 N.W.2d 773, 776 (Minn.App.1990) (final judgment, same cause of action, identical parties), *review denied* (Minn. Feb. 4, 1991). All four prongs must be met for res judicata to apply. *Joseph,* 636 N.W.2d at 327.

Appellant argues that there is no final judgment on the merits in the first lawsuit because this court remanded three counts to the district court for further consideration. In Minnesota, a judgment is final only after the appellate process is exhausted. *State Farm Mut. Auto. Ins. Co. v. Spartz,* 588 N.W.2d 173, 175 (Minn. App.1999), *review denied* (Minn. Mar. 30, 1999). Res judicata requires the expiration of the appellate process before a judgment is considered final. *Joseph,* 636 N.W.2d at 328 (concluding that judgment became "final judgment on the merits" for purposes of application of res judicata when judgment was entered and time for appeal from that judgment expired).

Here, the district court dismissed appellant's second lawsuit on res judicata grounds prior to the termination of the appellate process in the first lawsuit. Thus, there was no final judgment on the merits in the first lawsuit at the time the district court ordered dismissal of the second lawsuit and, therefore, the dismissal was premature. Further, finality in the first lawsuit continues to be suspended due to this court's remand of three counts and the Minnesota Supreme Court's pending review of the remaining count.

We conclude that there is no final judgment on the merits in the first lawsuit and, therefore, the district court erred by dis-

missing the second lawsuit on res judicata grounds. Because all four prongs must be met for res judicata to apply, we decline to address the remaining requirements. On remand of the second lawsuit, we defer to the authority of the district court to manage its own calendar, including the possible consolidation of both lawsuits.

## II.

Respondent raises the alternative argument that, even if res judicata does not bar appellant's second lawsuit, it should be dismissed because appellant is prohibited from "splitting" its cause of action.

"Minnesota law recognizes two principles of the doctrine of res judicata: (1) merger or bar, and (2) collateral estoppel." *Roseberg v. Steen,* 363 N.W.2d 102, 105 (Minn.App.1985). The "merger or bar" principle of the res judicata doctrine operates so that a party "should not be twice vexed for the same cause, and that it is for the public good that there be an end to litigation." *Hauser v. Mealey,* 263 N.W.2d 803, 807 (Minn.1978) (quotation omitted). "To that end, a plaintiff may not *split his cause of action* and bring successive suits involving the same set of factual circumstances." *Id.* (emphasis added). Thus, it is well settled in Minnesota that it is the doctrine of res judicata that prevents parties from splitting claims. *See Loo v. Loo,* 520 N.W.2d 740, 744 n. 1 (Minn.1994) (res judicata prevents parties from splitting claims into more than one lawsuit and precludes further litigation of the same claim); *Buchanan v. Dain Bosworth, Inc.,* 469 N.W.2d 508, 509–10 (Minn. App.1991) (res judicata prevents splitting of claims unless parties have agreed, or defendant has acquiesced, to claim splitting), *review denied* (Minn. July 24, 1991); *Nitz v. Nitz,* 456 N.W.2d 450, 452 (Minn. App.1990) (res judicata restricted party

from splitting her claims and bringing successive suits); *Gulbranson v. Gulbranson*, 408 N.W.2d 216, 218 (Minn.App.1987) (holding that "[r]es judicata as merger or bar forbids a party from withholding a claim from the initial action, where it could be joined and easily adjudicated, in order to retain a cause of action" for later lawsuit); *In re Minneapolis Comm. Dev. Agency*, 359 N.W.2d 687, 690 (Minn.App. 1984) (noting that one reason for res judicata doctrine is to discourage claim splitting).

■ Respondent, nonetheless, invites us to follow the California Supreme Court by adopting the prohibition against claim splitting as an affirmative defense separate from the doctrine of res judicata. *See Hamilton v. Asbestos Corp., Ltd.*, 22 Cal.4th 1127, 95 Cal.Rptr.2d 701, 998 P.2d 403, 414 (2000) (holding that rule against claim splitting can be applied under rule of abatement or under rule of res judicata).

■ But Minnesota law is clear that the prohibition against claim splitting is inextricably linked to res judicata. And there is no caselaw linking the claim-splitting prohibition to any other rule or doctrine. Further, "the task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court." *Tereault v. Palmer*, 413 N.W.2d

283, 286 (Minn.App.1987), *review denied* (Minn. Dec. 18, 1987); *see also Stubbs v. North Mem'l Med. Ctr.*, 448 N.W.2d 78, 80–81 (Minn.App.1989) (noting that it is not the function of the court of appeals to establish new causes of action, even when such actions appear to have merit), *review denied* (Minn. Jan. 12, 1990). Consequently, we decline to adopt the prohibition against claim splitting as an affirmative defense separate from the doctrine of res judicata.

## DECISION

Because we conclude that the district court erred by dismissing appellant's second lawsuit absent a final judgment on the merits in the first lawsuit and decline to adopt the prohibition against claim splitting as an affirmative defense separate and independent from res judicata, we reverse the district court judgment dismissing appellant's second lawsuit.

**Reversed.**